Dear Honorable Randle,
The Attorney General has received your request for an official opinion asking, in effect:
 1. Are domestic insurers who were lawfully authorized to transact the business of insurance in Oklahoma prior to October 1, 1980, required to meet the minimum surplus and expendable surplus requirements of 36 O.S. 610, 36 O.S. 611 (1981)?
 2. In the event that a domestic insurer who was lawfully authorized to transact the business of insurance prior to October 1, 1980, acquires control or merges with another domestic insurer, as generally governed by 36 O.S. 1651 et seq. (1981), does the insurer become subject to the minimum surplus and expendable surplus requirements of 36 O.S. 610, 36 O.S. 611 (1981)?
The Oklahoma Insurance Code, 36 O.S. 101 et seq. (1981), sets forth, in36 O.S. 610 and 36 O.S. 611 thereof, certain minimum funding requirements that must be met by domestic insurers in order to incorporate as an insurance company or to transact the business of insurance. These provisions state:
 "A. To qualify for authority to incorporate an insurance company or to transact any one or more kinds of insurance an insurer shall possess and maintain, after the effective date of this act, surplus in regard to policyholders, which is defined as the aggregate of the capital and surplus (if a stock insurer) or surplus (if a mutual or reciprocal insurer), in an amount not less than as shown by the applicable portion of the following schedule:
 "KINDS OF INSURANCE MINIMUM SURPLUS IN REGARD TO POLICYHOLDERS REQUIRED
"Life and/or accident and health $500,000.00
"Mutual benefit association converting to 500,000.00 legal reserve life or limited stock life
"Domestic fraternal converting to legal 500,000.00 reserve life
"Property 500,000.00
"Marine 500,000.00
"Casualty 500,000.00
"Vehicle 500,000.00
"Surety (except alien) 500,000.00
"Alien Surety 500,000.00
"Title 500,000.00
"All insurance except life, surety and title 500,000.00
"All insurance except life and title 500,000.00
 "B. Any domestic insurer lawfully authorized to transact the business of insurance in Oklahoma immediately prior to the effective date of this act shall not be required to increase its capital or surplus to meet increased requirements of this act, provided, however, that in no event shall such insurer reduce its capital or surplus below the figure required of insurers on January 1, 1979.
 "C. Wherever the language paid-in capital, capital, capital stock or a similar term (if a stock company) or surplus, expendable surplus or a similar term (if a mutual or reciprocal insurer) is used elsewhere in this Code, the term surplus in regard to policyholders may be used interchangeably when applicable."
36 O.S. 610 (1981).
 "In addition to the minimum surplus in regard to policyholders as required by 36 O.S. 610 of this article, each insurer shall possess at the time of initial authorization expendable surplus funds in an amount of not less than one-half (1/2) of the minimum surplus in regard to policyholders required by 36 O.S. 610 of this article."
36 O.S. 611 (1981).
The latest versions of these two statutes became effective on October 1, 1980, see, 1980 Okla. Sess. Laws, c.185, 1,2, and your initial question asks whether domestic insurers who were lawfully authorized to transact insurance business prior to that date must meet the minimum figures set forth.
Under the plain language of subsection (B) of 36 O.S. 610 (1981), above, domestic insurers who were lawfully transacting insurance business prior to October 1, 1980, are not required to increase their capital or surplus reserves to meet 36 O.S. 610's figures, and are forbidden to decrease these reserves below the figures required of insurers on January 1, 1979, if already above same. Where the language of a statute is plain and unambiguous, no occasion exists for the resort to rules of statutory construction, and the language used will be given its ordinary meaning.Matter of Phillips Petroleum Co., 652 P.2d 283 (Okla. 1982). The provisions of 36 O.S. 611 regarding expendable surplus funds, being facially dependent upon the applicability of the amounts set forth in 36O.S. 610, similarly are not called into effect.
Your second inquiry presents a different scenario. You ask whether such a preexisting domestic insurer would become subjected to these funding requirements in the event that the insurer acquires control of or merges with another domestic insurer, as defined in 36 O.S. 1651(c) (1981) and governed generally by 36 O.S. 1653 (1984).
Under 36 O.S. 1653(a), before any such domestic insurer may attempt to gain "control" of another domestic insurer, or merge with same, it must satisfy several filing and notification requirements. "Control" is defined thusly:
 "(c) Control. The term `control' (including the terms `controlling', `controlled by' and `under common control with') means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract or otherwise, unless the power is the result of an official position with or corporate office held by the person. Control shall be presumed to exist if any person, directly or indirectly, owns, controls, holds with the power to vote, or holds proxies representing twenty-five percent (25%) or more of the voting securities of any other person. This presumption may be rebutted by a showing that control does not exist in fact in the manner provided in Section 4(i). The Commissioner may determine, after furnishing all persons in interest notice and opportunity to be heard and making specific findings of fact to support such determination, that control exists in fact, notwithstanding the absence of a presumption to that effect." 36 O.S. 1651(c) (1981).
After these filing and notice requirements are met, a public hearing on the matter under the auspices of the Insurance Commissioner is required to be held, and the Insurance Commissioner must approve of the merger or other acquisition of control unless he determines the existence of any of several factors is present. Title 36 O.S. 1653 (1984) provides, in pertinent part:
"(d) Approval by Commissioner: Hearings.
 "(1) The Commissioner shall approve any merger or other acquisition of control referred to in subsection (a) unless, after a public hearing thereon, he finds that:
 "(i) After the change of control the domestic insurer referred to in subsection (a) would not be able to satisfy the requirements for the issuance of a license to write the line or lines of insurance for which it is presently licensed."
While an argument can be presented which would view the provisions of36 O.S. 610 and 36 O.S. 611 in contradiction to those of 36 O.S. 1653 (d) (1) (i), the preferable rule of construction is to view statutes in harmony, if such a view is possible. See, Cowart v. Piper AircraftCorp., 665 P.2d 315 (Okla. 1983). These statutes are readily harmonized by viewing 36 O.S. 610(B) as a so-called "grandfather clause," permitting already-established domestic insurers to stay in business without altering upward their surplus reserves, so long as they maintain their present form. When such an insurer merges with or acquires control of another insurer, however, the provisions of 36 O.S. 1653(d)(1)(i) are triggered, and, due to that change, the Commissioner can deny merger or acquisition approval unless the funding requirements of 36 O.S. 610 and36 O.S. 611 are met by the new organization.
It is, therefore, the official opinion of the Attorney Generalthat:
 1. Domestic insurers who were lawfully authorized to transact the business of insurance in Oklahoma prior to October 1, 1980, are not required, absent a merger with or acquisition of control of another domestic insurer, to meet the minimum surplus and expendable surplus funding requirements of 36 O.S. 610, 36 O.S. 611 (1981).
 2. In the event such a domestic insurer merges with or acquires control of another domestic insurer, as defined by 36 O.S. 1651 et seq. (1981), the Insurance Commissioner may deny approval of the merger or acquisition, under 36 O.S. 1653(d)(1)(i) (1984), if the new organization would not be able to meet the funding requirements of 36 O.S. 610, 36 O.S. 611 (1981).
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
MICHAEL SCOTT FERN, ASSISTANT ATTORNEY GENERAL DEPUTY CHIEF, TORT CLAIMS DIVISION